UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'09 CIV 3275**

------------------------------------------------- x
PATRICIA FRANCOIS,

        Plaintiff,

against                                    09 Civ._____

MATTHEW MAZER, SHERYL SHADE,

        Defendants.

------------------------------------------------- x

## COMPLAINT

**PLEASE TAKE NOTICE** that Plaintiff Patricia Francois by her attorneys, GIBSON, DUNN & CRUTCHER LLP and URBAN JUSTICE CENTER, as and for her Complaint alleges and seeks relief for violations of the federal Fair Labor Standards Act ("FLSA"), violations of the New York Labor Law, assault, battery, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of contract, promissory estoppel and quantum meruit as follows:

## SUMMARY OF COMPLAINT

1.     Plaintiff was employed by Defendants Matthew Mazer and Sheryl Shade (collectively, "Defendants") as a nanny, caring for Defendants' daughter for approximately six and a half years beginning in approximately April 2002. At various times throughout the term of her employment, Defendants failed to pay Plaintiff overtime and other wages to which she was legally entitled, and paid Plaintiff wages that were far below the rate of pay that she was promised.

1

2. Plaintiff's employment came to an abrupt halt on December 18, 2008 when she was maliciously attacked by Defendant Mazer, both physically and verbally. On that day, Defendant Mazer was berating his daughter for failing to rehearse her lines for a holiday skit. When Plaintiff came to Defendants' daughter's aid and attempted to comfort the child, Defendant Mazer called her a "stupid black bitch" and told her that he despises her and that he hopes she "die[s] a horrible death." He then slapped Plaintiff hard across her face. When she struggled against him and attempted to call the police, he violently twisted her hand and punched her in the face and torso.

3. As a result of Defendant Mazer's egregious attack, Plaintiff suffered physical injuries, including severe bruising and swelling on her face and hand, headaches and backaches. Additionally, she experiences ongoing emotional distress, including humiliation, stress and trouble sleeping.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to Plaintiff's federal claims that they form parts of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to the claims occurred in this district and because each of the Defendants reside in this district.

## PARTIES

7. Plaintiff Patricia Francois is an adult individual residing in Brooklyn, New York.

8.   Defendant Matthew Mazer resides at 171 West 57th Street, New York, NY 10019.

9.   Defendant Sheryl Shade resides at 171 West 57th Street, New York NY 10019.

10.   Defendants Mazer and Shade are an educated, prosperous couple. Defendants Mazer and Shade have one daughter, who is currently eight years old.

11.   Defendants hired Plaintiff as a nanny to care for their baby daughter in their home in or about April 2002.

## Plaintiff's Employment by Defendants

12.   From approximately April 2002 until approximately September 2003, Plaintiff worked a regular schedule five days a week from approximately 9:00 a.m. to approximately 7:00 p.m. Regularly, at Defendants' request, Plaintiff worked as late as approximately 11:00 p.m. or midnight. Plaintiff's duties consisted of caring for and tending to the needs of Defendants' daughter, including feeding, bathing, changing diapers, and playing with her.

13.   From approximately April 2002 until approximately September 2003, Defendants paid Plaintiff $500 weekly, or $10 per hour based on what was supposed to be a 50 hour work week.

14.   Beginning approximately September 2003, Plaintiff's schedule changed to accommodate Defendants' daughter's school schedule. From approximately September 2003 to approximately September 2005, Plaintiff was generally scheduled to work approximately 40 hours a week, but regularly worked in excess of 40 hours. Plaintiff's duties after approximately September 2003 included picking up Defendants' daughter at school or camp, taking her to appointments and activities, and feeding, bathing, and caring for her in Defendants' home.

15. From approximately September 2003 to approximately September 2005, Defendants paid Plaintiff $500 weekly, or $12.50 per hour based on what was supposed to be a 40 hour week.

16. In or about September 2005, Plaintiff's schedule was significantly reduced. From September 2005 until Plaintiff's employment was terminated in December 2008, Plaintiff worked a variable schedule during the school year (the "School Year Schedule") and a regular schedule during the summer (the "Summer Schedule"). During the School Year Schedule, which began in approximately September and ended in approximately June, Plaintiff worked approximately 4.5 to 6.5 hours per day, five days per week, depending on Defendants' daughter's school and activity schedule. During the Summer Schedule, which began in approximately June and ended in approximately September, Plaintiff worked a regular schedule of approximately 40 hours per week.

17. During the School Year Schedule, Plaintiff was regularly asked to work late, working as many as 8 hours in a day. During the Summer Schedule, Plaintiff regularly worked in excess of 40 hours in a work week.

18. In connection with the change in her schedule in or about September 2005, Plaintiff received written notice from Defendants that her pay was to be increased to $14 per hour and that her regular schedule would be reduced to 4.5 hours per day. Plaintiff agreed to these terms. However, when September 2005 arrived, Plaintiff was regularly asked to work far in excess of 4.5 hours per day and was paid only $250 per week, regardless of the hours worked. In or around June 2006, Plaintiff's pay was increased to $400 per week for both the Summer Schedule and the School Year Schedule.

19. In or around August 2004, Plaintiff was asked to accompany Defendants' family on a week-long vacation to Florida, during which time Plaintiff worked every day from approximately 7:30 a.m. until approximately 9:30 p.m.

20. Plaintiff did not receive any additional money when she was required to work more than her regularly scheduled hours.

21. Despite regularly working weeks in excess of 40 hours per week, Plaintiff did not receive any overtime compensation.

22. From approximately April 2002 until approximately September 2003 and during the Summer Schedule, Plaintiff regularly worked a spread of hours in excess of ten. A "spread of hours" is the interval between the beginning and end of an employee's work day.

23. When Plaintiff worked a spread of hours in excess of ten hours, she did not receive any additional compensation.

24. Plaintiff continued to provide care to Defendants' child until on or about December 18, 2008 when Plaintiff was viciously and brutally verbally and physically attacked by Defendant Mazer.

25. At all times relevant to this action, Plaintiff was an employee of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e) and the New York Labor Law §§ 2, 190(2), 651(5).

### Defendant Mazer's Attack on Plaintiff

26. Defendant Mazer is a physically fit man who is at least six inches taller than Plaintiff.

27. On or about the evening of December 18, 2008, Plaintiff was caring for Defendants' child in their home, bathing her and preparing her dinner.

28. At approximately 6:30 p.m., shortly after arriving home, Defendant Mazer came into his daughter's bedroom and confronted his daughter about her failure to memorize a line for a holiday skit. Defendant then took his daughter into another room and continued to berate her. Plaintiff could hear the daughter crying from the other room.

29. Plaintiff called into the room where Defendant Mazer had taken his daughter and asked Defendant Mazer not to berate his daughter in this manner, telling him that he was damaging his daughter emotionally. Defendant Mazer became irate and began to yell and shout. He then demanded the cellular phone and house key that Defendants had provided to Plaintiff so she could do her job. Plaintiff understood this to mean that she was terminated.

30. While Plaintiff was gathering her things and preparing to leave, she heard Defendant Mazer telling his daughter that she would be without a babysitter, and would have to take care of herself from now on. At this, Defendants' daughter again began to cry and Plaintiff went to comfort the child. Defendant Mazer followed Plaintiff into the room. He proceeded to taunt and insult Plaintiff, calling her a "stupid black bitch" and telling her that he hates and despises her and that he hopes she "die[s] a horrible death." Plaintiff and Defendant then began to argue. Defendant Mazer slapped Plaintiff hard across her face. At one point, Plaintiff found herself on the floor. She then reached for a small child-size stool to defend herself, and began to stand with it, while Defendant Mazer hovered over her. She then lowered the stool and reached for a phone to call the police. Defendant Mazer grabbed her arm. He then twisted the phone out of her hand. Plaintiff went into the hallway to get another phone. Defendant Mazer grabbed Plaintiff's hand again, twisting it and causing severe pain, digging his fingernails into her hand,

causing her to fall to the ground. Defendant Mazer then fell or came down partially on top of Plaintiff and punched her in the face and torso several times with his closed fist.

31. During this confrontation, Plaintiff feared for her life and safety because Defendant Mazer was much larger physically and was seemingly out of control. While pinned down by Defendant Mazer, Plaintiff struggled and kicked against Defendant Mazer to get free. After Plaintiff escaped from under Defendant Mazer, Plaintiff rushed towards the apartment door and opened it to leave. Defendant Mazer pinned Plaintiff between the door and the door jamb in an attempt to prevent Plaintiff from leaving the apartment, but she managed to squeeze out of the door. Defendant Mazer then threw Plaintiff's coat and bag out after her.

32. Plaintiff sought assistance from a neighbor, and from the building's doorman and maintenance person. On information and belief, one of these people called 911. Plaintiff was escorted by the doorman to the building's lobby where she awaited the arrival of the police. Several police officers from the 18th Precinct arrived at the scene. After speaking with Plaintiff and Defendant Mazer, the police officers asked Plaintiff whether she wanted to press charges against Defendant Mazer. Plaintiff declined to press charges at the time because she did not want Defendant's daughter to have the trauma of seeing him arrested and taken away in handcuffs. Plaintiff was also concerned that, because Defendant Shade was out of town on a business trip, Defendants' daughter would be put into the custody of social services.

33. As a result of this attack, Plaintiff suffered a black eye, and a cut and contusion on her hand. She also suffered severe bruising on her face and pain in her back. For several days, Plaintiff experienced headaches and blurry vision. For approximately one week after the incident, Plaintiff had difficulty moving about because of the pain.

34. In addition to physical injury, Plaintiff also suffered severe emotional distress, including humiliation, stress, and trouble sleeping.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Unpaid Overtime under Fair Labor Standards Act)
### (against Defendants Mazer and Shade)

35. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

36. Pursuant to the FLSA, an employer is required to pay overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour in excess of forty in a work week. 29 U.S.C. §§ 207(a), (*l*).

37. At all times relevant to this action, Defendants were employers engaged in commerce within the meaning of 29 U.S.C. § 207(a).

38. Defendants failed to pay Plaintiff overtime compensation of one and one-half times her regular rate of pay for all hours worked in excess of forty in a work week in violation of 29 U.S.C. § 207(*l*).

39. Defendants' failure to pay overtime compensation was willful.

40. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly or severally, her unpaid overtime wages in an amount to be determined at trial, plus statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of the action, including post-judgment interest, pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### (Assault)
### (against Defendant Mazer)

41. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

42.     Defendant Mazer assaulted Plaintiff, intentionally placing her in fear of imminent harmful or wrongful physical contact without Plaintiff's consent.

43.     Defendant Mazer's actions were malicious and cruel.

44.     As a result of the foregoing, Plaintiff has suffered and will suffer emotional pain, including humiliation, stress and trouble sleeping.

45.     Accordingly, she is entitled to compensatory damages and punitive damages in amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Battery)
### (against Defendant Mazer)

46.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

47.     Defendant Mazer intentionally caused harmful contact with Plaintiff by slapping her face, punching her in the torso and face, and grabbing, twisting and cutting her hand without Plaintiff's consent.

48.     As a result of the foregoing, Plaintiff has suffered physical pain, including a black eye, severe bruising and swelling in her hand and face, headaches and backaches. Additionally, Plaintiff has suffered and will suffer emotional pain, including humiliation, stress and trouble sleeping.

49.     Accordingly, she is entitled to compensatory damages and punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Unpaid Overtime under New York Labor Law)
### (against Defendants Mazer and Shade)

50. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

51. Under New York law, employers are required to pay overtime wages at rates at least one and one-half times the regular rate of pay for each hour worked in excess of forty hours per week. N.Y. Comp. Codes R. and Regs. Tit. 12, § 142.-2.2.

52. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2, 190, and 651.

53. Defendants willfully and knowingly failed to pay Plaintiff overtime wages at rates at least one and one-half times her regular rate of pay for each hour worked in excess of forty hours per week, in violation of the New York Minimum Wage Act and its regulations, specifically N.Y. Comp. Codes R. and Regs. Tit. 12, § 142.-2.2.

54. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages in an amount to be determined at trial, plus statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest pursuant to New York Labor Law §§ 198 and 663.

## FIFTH CAUSE OF ACTION
### (Unpaid Spread of Hours Pay under New York Law)
### (against Defendants Mazer and Shade)

55. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

56. Under New York law, an employer is required to pay an employee one extra hour's wages at the minimum wage for any day when the employee's "spread of hours" exceeds 10 hours. N.Y. Comp. Codes R. and Regs. Tit. 12, § 142-2.4.

57. Defendants often required Plaintiff to work a spread of hours in excess of 10 hours a day.

58. Defendants willfully failed to pay Plaintiff spread-of-hours wages of an additional hour of pay at the minimum wage for each day Plaintiff had a spread in excess of ten hours per day, in violation of the New York Labor Law and the New York Minimum Wage Act and N.Y. Comp. Codes R. and Regs. Tit. 12, § 142-2.4.

59. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid spread-of-hours wages in an amount to be determined at trial, plus statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest pursuant to New York Labor Law §§ 198 and 663.

### SIXTH CAUSE OF ACTION
### (Unpaid Earned Wages under New York Law)
### (against Defendants Mazer and Shade)

60. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

61. Under New York law, an employer is required to pay an employee the wages earned in accordance with the agreed terms of employment. New York Labor Law § 191.

62. In or about June 2005, Plaintiff and Defendants agreed and assented that beginning on September 7, 2005, Plaintiff would provide services as a nanny, and Defendants would compensate Plaintiff at an hourly wage of $14 per hour.

63. Plaintiff provided services as a nanny, generally working between approximately 28 and 32.5 hours per week from September 2005 to approximately June 2006, but was paid only $250 per week, regardless of the number of hours worked.

64. Defendants willfully failed to pay Plaintiff her wages earned in accordance with the agreed terms of employment.

65. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid earned wages in an amount to be determined at trial, plus statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest pursuant to New York Labor Law § 198.

### SEVENTH CAUSE OF ACTION
### (Breach of Contract)
### (against Defendants Mazer and Shade)

66. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

67. In or about June 2005, Plaintiff and Defendants agreed and assented that beginning on September 7, 2005, Plaintiff would provide services as a nanny, and Defendants would compensate Plaintiff at an hourly wage of $14 per hour.

68. Plaintiff provided services as a nanny, working between approximately 28 and 32.5 hours per week from September 2005 to approximately June 2006, but was paid only $250 per week, regardless of the number of hours worked. Plaintiff fully performed her obligations pursuant to this agreement.

69. By failing to pay Plaintiff for the services she performed, Defendants breached the agreement between the parties.

70. As a direct result of this breach of the agreement, Plaintiff has been damaged by Defendants in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
### (Promissory Estoppel)
### (against Defendants Mazer and Shade)

71. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

72. As set forth above, Defendants made a clear and unambiguous promise that Plaintiff would be paid $14 per hour for her services as a nanny beginning approximately September 2005 until approximately June 2006.

73. By making this promise, Defendants reasonably and foreseeably expected that, by this representation alone, Plaintiff would be induced to provide services to Defendants.

74. In reliance on Defendants' promise, Plaintiff provided her services as a nanny to Defendants.

75. As a consequence of Defendants' refusal to honor their promise, Plaintiff has been damaged financially in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### (Quantum Meruit)
### (against Defendants Mazer and Shade)

76. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

77. From approximately September 2005 to approximately June 2006, Plaintiff provided services as a nanny to Defendants in good faith.

78. Defendants accepted these services, and Plaintiff expected to be fairly and equitably compensated for the services rendered to Defendants, the value of which is calculable.

79. Defendants did not fairly and equitably compensate Plaintiff.

80. Plaintiff should be compensated in quantum meruit in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (against Defendant Mazer)

81. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

82. Defendant Mazer insulted Plaintiff in an extreme and outrageous manner by calling her "stupid black bitch" and telling her that he hates and despises her and that he hopes she "die[s] a horrible death." Defendant Mazer also acted well beyond the bounds of normal human decency by physically attacking Plaintiff – slapping her on her face, twisting and squeezing her hand, and punching her in the face and torso.

83. As a result of Defendant Mazer's insults and physical abuse, Plaintiff was put in fear of her safety and health and has suffered and continues to suffer extreme emotional distress.

84. By behaving so outrageously, Defendant Mazer acted at least negligently in causing Plaintiff's extreme emotional distress.

85. Accordingly, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (against Defendant Mazer)

86.  Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

87.  Defendant Mazer insulted Plaintiff in an extreme and outrageous manner by calling her "stupid black bitch" and telling her that he hates and despises her and that he hopes she "die[s] a horrible death." Defendant Mazer also acted well beyond the bounds of normal human decency by physically attacking Plaintiff – slapping her on her face, twisting and squeezing her hand, and punching her in the face and torso.

88.  As a result of Defendant Mazer's outrageous and extreme behavior, Plaintiff was put in fear of her safety and health and suffered and continues to suffer extreme emotional distress.

89.  Defendant Mazer knowingly and intentionally acted with the goal of causing Plaintiff extreme emotional distress.

90.  Accordingly, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL**

91.  Plaintiff is entitled to and hereby demands a jury trial in this matter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

(a) On Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Causes of Action, for a sum to be determined at trial;

(b) Awarding Plaintiff punitive damages;

(c) Prejudgment and postjudgment interest;

(d) Plaintiff's reasonable attorneys' fees, together with the costs and disbursements of this action; and

(e) Such other and further relief as the Court deems just and proper.

Dated: New York, NY
April 3, 2009

>Respectfully Submitted,
>
>GIBSON, DUNN & CRUTCHER, LLP
>
>By: _____
>Adam Offenhartz (AO-0952)
>Michelle Craven (MC-8556)
>200 Park Avenue, 47th Floor
>New York, NY 10166-0193
>(221) 351-3818
>
>*and*
>
>URBAN JUSTICE CENTER
>Molly Biklen
>Carmela Huang
>123 William Street, 16th Floor
>New York, NY 10038
>(646) 602-5600
>
>*Attorneys for Plaintiff*