UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PATRICIA FRANCOIS,

     Plaintiff,

  -against-

MATTHEW MAZER, SHERYL SHADE,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

09 Civ. 3275 (KBF)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMAND
TO STATE COURT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Plaintiff Patricia Francois*

January 27, 2012

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 2

    I.    Beginning In 2002 And Through September 2003, Defendants Require Ms. Francois To Work Substantially More Hours Than Had Been Agreed ................ 2

    II.   From September 2003 Through September 2005, Defendants Continue To Require Ms. Francois Regularly To Work More Than 40 Hours Per Week ......... 2

    III.   Defendants Require Ms. Francois To Accompany Defendants On Their Vacations But Do Not Properly Compensate Her For Her Work ............................................ 3

    IV.  Defendants Continue To Require Ms. Francois To Work Hours For Which She Is Not Compensated After Changing Her Work Schedule In 2005 .......................... 3

    V.   Ms. Francois's Employment Comes To An Abrupt End When Defendant Mazer Brutally Attackes Her On The Night Of December 18, 2008 .............................. 5

ARGUMENT ................................................................................................... 7

    I.    Defendants' Motion Should Be Denied Because It Fails To Identify The "Undisputed Facts" Upon Which It Purportedly Relies ...................................... 7

    II.   Triable Issues Of Disputed Fact Preclude Summary Judgment On Plaintiffs' Wage And Hour Claims ............................................................................... 8

        A.   Ms. Francois's Burden On Summary Judgment Is "Lenient" And "Not High" ............................................................................................. 9

        B.   Defendants Cannot And Do Not Claim That There Are No Material Disputed Facts .................................................................................. 10

        C.   Ms. Francois's Allegations That She Was Not Paid Overtime Are Sufficient To Establish A Triable Issue Of Fact ..................................... 11

        D.   Defendants Have Failed To Rebut The Presumption That Ms. Francois's Weekly Salary Covered Only A Forty-Hour Work Week ...................... 12

    III.   Disputed Issues Of Material Fact Exist Concerning Ms. Francois's Breach Of Contract Claim ........................................................................................ 14

    IV.  The Existence Of Material Issues Of Disputed Fact Prevent The Resolution Of Ms. Francois's Quantum Meruit Claims On Summary Judgment ...................... 16

V.      Summary Judgment On Ms. Francois's Promissory Estoppel Claim Would Be Improper ........................................................................................... 18

VI.     Plaintiff's Emotional Distress Claims Should Proceed to Trial ......................... 21

        A.      Defendant Mazer's Conduct Was Extreme And Outrageous ................. 21

        B.      The Extent Of Ms. Francois's Emotional Distress Is A Jury Question ... 22

        C.      Plaintiff's Emotional Distress Claims Are Not Duplicative Of The Assault Claim ............................................................................................ 23

VII.    This Court Is The Proper Forum For Ms. Francois's State Law Claims ............. 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Afroze Textile Indus. (Private) Ltd. v. Ultimate Apparel, Inc.*,
   No. 07-CV-3663 (JFB) (AKT), 2009 WL 2167839 (E.D.N.Y. July 20, 2009)........................ 17

*Analytica Grp. v. Schoonveld*,
   Index No. 604258/05, 2008 NY Slip Op 32091U (Sup. Ct. N.Y. Cnty. July 25, 2008) .......... 21

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   No. 06 Civ. 2692 (KMW) (RLE), 2008 WL 4443828 (S.D.N.Y. Sept. 29, 2008).................. 18

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946)............................................................................................................... 9, 12

*B2X Corp. v. Classic Closeouts, LLC*,
   No. 08 Civ. 4552 (RJS), 2010 WL 2230198 (S.D.N.Y. May 26, 2010)................................... 16

*Bessemer Trust Co. v. Branin*,
   498 F. Supp. 2d 632 (S.D.N.Y. 2007) .................................................................................... 20

*Brewton v. City of N.Y.*,
   550 F. Supp. 2d 355 (E.D.N.Y. 2008) .................................................................................... 24

*Chan v. Sung Ye Tung Corp.*,
   No. 03 Civ. 6048 (GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)..................................... 12

*Daniels v. Alvarado*,
   No. 03 CV 5832 (JBW), 2004 WL 502561 (E.D.N.Y. Mar. 12, 2004)................................... 21

*Deutsche Asset Mgmt. v. Callaghan*,
   No. 01 Civ. 4426 CBM, 2004 WL 758303 (S.D.N.Y. Apr. 7, 2004)....................................... 16

*Deutsche v. Kroll Assocs.*,
   No. 02 Civ. 2892 (JSR), 31 Employee Benefits Cas. 2060 (S.D.N.Y. Sept. 19, 2003) .......... 20

*Disanto v. Mc-Graw Hill, Inc./Platt's Div.*,
   No. 97 Civ. 1090 JGK, 1998 WL 474136 (S.D.N.Y. Aug. 11, 1998)...................................... 18

*Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Grp. Inc.*,
   636 F. Supp. 2d 223 (S.D.N.Y. 2009) ................................................................................ 16, 17

*Felton v. King of Salsa, LLC*,
   No. 09 Civ. 7918, 2010 WL 1789934 (S.D.N.Y. May 4, 2010)................................................ 8

*Friedman v. Schwartz*,
   No. CV 08-2801 (WDW), 2011 WL 6329853 (E.D.N.Y. Dec. 16, 2011) ............................... 15

*Giles v. City of N.Y.*,
   41 F. Supp. 2d 308 (S.D.N.Y. 1999) .................................................................................. 12, 13

*Holtz v. Rockefeller & Co.*,
   258 F.3d 62 (2d Cir. 2001) ...................................................................................................... 8

*Jacobs v. Carsey-Werner Distrib., Inc.*,
   No. 93 Civ. 6825 (LMM), 1994 WL 116077 (S.D.N.Y. Mar. 30, 1994) ........................... 19, 20

*Kuebel v. Black & Decker Inc.*,
 643 F.3d 352 (2d Cir. 2011) ....................................................................... 9, 10, 12

*Langman Fabrics v. Graff Californiawear, Inc.*,
 160 F.3d 106 (2d Cir. 1998) ................................................................................ 12

*Learning Annex Holdings LLC v. Whitney Educ. Grp., Inc.*,
 765 F. Supp. 2d 403 (S.D.N.Y. 2011) .................................................................. 17

*Leber Assocs., LLC v. Entm't Grp. Fund, Inc.*,
 No. 00 Civ. 3759 LTS MHD, 2003 WL 21750211 (S.D.N.Y. July 29, 2003) .................. 16, 17

*Magnoni v. Smith & Laquercia, LLP*,
 661 F. Supp. 2d 412 (S.D.N.Y. 2009) ........................................................... 9, 10, 11

*Manigault v. Macy's East, LLC*,
 318 Fed. Appx 6 (2d Cir. 2009) ........................................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) ............................................................................................. 9

*McGrath v. Nassau Health Care Corp.*,
 217 F. Supp. 2d 319 (E.D.N.Y. 2002) ................................................................... 24

*Murphy v. Am. Home Prods. Corp.*,
 448 N.E.2d 86 (N.Y. 1983) ................................................................................. 22

*Nichols v. Mahoney*,
 608 F. Supp. 2d 526 (S.D.N.Y. 2009) ................................................................... 11

*Oakley v. Fed'n Emp't & Guidance Servs., Inc.*,
 No. 10 Civ. 7739 (JSR), 2012 WL 20534 (S.D.N.Y. Jan. 4, 2012)........................... 25

*Persaud v. S. Axelrod Co.*,
 No. 95 Civ. 7849 (RPP), 1996 WL 11197 (S.D.N.Y. Jan. 10, 1996)........................ 22

*Piven v. Wolf Haldenstein Adler Freeman & Herz, L.L.P.*,
 No. 08 Civ. 10578 (RJS), 2010 WL 1257326 (S.D.N.Y. Mar. 21, 2010) ............ 18, 19, 20

*Purgess v. Sharrock*,
 33 F.3d 134 (2d Cir. 1994) ................................................................................. 25

*Ramirez v. Rifkin*,
 568 F. Supp. 2d 262 (E.D.N.Y. 2008) ................................................................... 10

*Raucci v. Town of Rotterdam*,
 902 F.2d 1050 (2d Cir. 1990) .............................................................................. 25

*Roberts v. Karimi*,
 204 F. Supp. 2d 523 (E.D.N.Y. 2002) ................................................................... 20

*Rule v. Brine, Inc.*,
 85 F.3d 1002 (2d Cir. 1996) ................................................................................ 17

*Solis v. Cindy's Total Care, Inc.*,
 No. 10 Civ. 7242 (PAE), 2012 WL 28141 (S.D.N.Y. Jan. 5, 2012) ......................... 13

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
 487 F.3d 89 (2d Cir. 2007) ................................................................................. 14

*United States v. Katz*,
 No. 10 Civ. 3335, 2011 WL 2175787 (S.D.N.Y. June 2, 2011)................................ 8

*Wong v. Hunda Glass Corp.*,
    No. 09 Civ. 4402 (RLE), 2010 WL 2541698 (S.D.N.Y. June 23, 2010) ................................ 12

*Zhong v. August Corp.*,
    498 F. Supp. 2d 625 (S.D.N.Y. 2007) ................................................................ 11

*Zubair v. Entech Eng'g*,
    No. 09 Civ. 7927 (VM), 2011 WL 4000888 (S.D.N.Y. Aug. 17, 2011) ................................ 14

**Statutes**

28 U.S.C. § 1367 ................................................................................................ 25

29 U.S.C. § 207(a)(1) ........................................................................................ 13

29 U.S.C. § 211(c) ............................................................................................... 9

**Rules**

Fed. R. Civ. P. 56 ............................................................................................... 8

## PRELIMINARY STATEMENT

This is a straightforward action seeking redress for grievous mistreatment suffered by a domestic worker at the hands of her employers.  For years, Patricia Francois, the former nanny to Defendants' daughter, was chronically overworked and underpaid by Defendants, in violation of federal and New York state labor law and the common law.  Then, in December 2008, while attempting to defend her young charge from an unwarranted verbal berating by her father, Ms. Francois was physically injured and emotionally scarred when Defendant Mazer violently punched Ms. Francois in the face and disparaged her race, all in front of his young daughter. After her trip to the hospital, Ms. Francois decided that enough was enough, brought this suit and, through her courage, spurred a widespread effort to strengthen the legal protections afforded domestic workers in this City and State.  She has become the bruised face of a movement asking society not to overlook those who care for its youngest members.

For their part, Defendants—facing indisputable proof that Ms. Francois was physically injured by Mr. Mazer—bring this motion for *partial* summary judgment in an attempt to escape the repercussions of the emotional distress resulting from the abuse they visited on Ms. Francois, and to punish Ms. Francois for *Defendants'* outright failure to uphold their statutory duty to maintain books and records as employers.  Significant issues of disputed fact exist, however, as to the hours Ms. Francois worked and the wages she was owed.  For all of Defendants' bluster in declaring Ms. Francois "not credible," and in mischaracterizing the record generally and Ms. Francois's testimony in particular, the simple truth is that Ms. Francois's wage and hour, contract and quasi-contract, and emotional distress claims all turn on issues that can only be resolved by the finder of fact.  Furthermore, Defendants do not (and cannot) seek summary judgment on Ms. Francois's claims for assault and battery.  Accordingly, Defendants' motion should be denied, and all of Ms. Francois's claims should proceed to trial.

## STATEMENT OF FACTS[1]

I.    **Beginning In 2002 And Through September 2003, Defendants Require Ms. Francois To Work Substantially More Hours Than Had Been Agreed**

Beginning in 2002, when she was hired, and continuing through September 2003, Ms. Francois and Defendants agreed that she would work as Defendants' nanny from the hours of 9 a.m. to 7 p.m., five days per week.  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 174:15-17; *see also id.* at 182:3-6; Declaration of Patricia Francois, dated January 27, 2012 ("Francois Decl."), ¶ 5.  In fact, however, Ms. Francois often worked much longer.  For example, during this time, Ms. Francois worked as late as 11:00 p.m. or midnight when Defendants' business and social engagements kept them out of the house.  Francois Decl. ¶ 5.

II.   **From September 2003 Through September 2005, Defendants Continue To Require Ms. Francois Regularly To Work More Than 40 Hours Per Week**

Beginning in September 2003, Ms. Francois was to work approximately eight hours a day, five days per week.  According to Defendant Shade, Ms. Francois's agreed-to hours were approximately 9:15 a.m. to 5:00 p.m.  Trepelkova Decl. Ex. E (Shade Aff.) ¶ 8.  Yet Ms. Francois regularly worked more than 40 hours per week.  Compl. ¶ 14; Francois Decl. ¶ 8.  Documents produced by Defendants establish that Ms. Francois was expected to stay later than 5 p.m. on numerous occasions.  *See* Trepelkova Decl. Ex. F.  Nonetheless, Ms. Francois was never compensated for her extra hours.  Francois Decl. ¶ 8.  Instead, Ms. Francois was paid the same amount each week ($500) regardless of the number of hours she actually worked.  *See* Compl. ¶ 15; Francois Decl. ¶ 8.

---

[1] As discussed in more detail *infra*, Defendants have failed to comply with Fed. R. Civ. P. 56 and Local Rule 56.1.  Accordingly, Plaintiff cannot provide the Court with a complete description of all the facts that are in dispute in this matter.  This section summarizes just some of the key facts relevant to Defendants' challenges to Ms. Francois's claims.

**III.    Defendants Require Ms. Francois To Accompany Defendants On Their Vacations But Do Not Properly Compensate Her For Her Work**

In addition to providing services at Defendants' home, Ms. Francois accompanied Defendants on a week-long trip to Florida in August 2003.  Francois Decl. ¶ 6.  She made a similar trip to Florida in August 2004.  Trepelkova Ex. C (Francois Dep. Tr.) at 191:24–192:2, 192:24-25.  Ms. Francois was working or on call throughout these trips, more than 40 hours per week.  Francois Decl. ¶ 7.  Indeed, she went to Florida on the understanding that she would be working.  Trepelkova Ex. C (Francois Dep. Tr.) at 193:21-24.  "It was all about work for me," Ms. Francois explained.  *Id.*  "It was not my vacation."  *Id.*  And yet, Ms. Francois received no overtime for her extra work during these trips.  Francois Decl. ¶¶ 6-7.

**IV.    Defendants Continue To Require Ms. Francois To Work Hours For Which She Is Not Compensated After Changing Her Work Schedule In 2005**

In 2005, the parties agreed that Ms. Francois's hours would decrease.  Trepelkova Ex. F (June 2005 Letter).  Yet in September 2005, her hours began to vary even more than they had before.  Francois Decl. ¶ 9.  As Ms. Francois explained, "it could be 31 hours" per week, or "it could be 34 hours."  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 190:24-25; *see also id.* at 191:10-12 ("My hours . . . varied.  It could have been 30 hours.  It could have been 40 hours.  It could have been 20 hours.  It varied.").  Meanwhile, although Ms. Francois's hours were supposed to decrease, the Defendants had informed Ms. Francois that her wages would increase from $12 per hour to $14 per hour.  Trepelkova Ex. F (June 2005 Letter).  Yet, Ms. Francois was not paid $14 per hour.  Francois Decl. ¶¶ 9, 10.  Instead, beginning in September 2005, she was paid $250 a week, and later $400 per week regardless of the number of hours she worked.  *Id.*; Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 191:12-13 ("But I still get $400.").

During this period, as was the case throughout Ms. Francois's employment, she regularly worked past her scheduled departure time in the evenings.  Francois Decl. ¶¶ 9, 10.  Defendant

Shade, who typically relieved Ms. Francois, often worked an hour or two later than she was supposed to under Defendants' agreement with Plaintiff, forcing Ms. Francois to work overtime, for which she then was not compensated.  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 212:3-6; *see also id.* at 184:23-24 (testifying that, while Ms. Francois occasionally arrived at work "[a]t a later time, like 11:30," she sometimes stayed "until 9:00, 9:30").  And, once or twice per month, Ms. Francois stayed at Defendants' residence until 11:00 or 11:30 p.m. because Defendants were out at personal engagements.  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 211:12-14.  Plaintiff was not paid for these extra hours.  Francois Decl. ¶ 10.

Defendants assert that, between September 2006 and June 2007, Ms. Francois worked from approximately 2:45 p.m. to 7:00 p.m. and "<u>never</u> worked . . . more than ten hours a day." Trepelkova Decl. Ex. E (Shade Aff.) ¶ 11 (emphasis in original).  The log book establishes, however, that Ms. Francois's hours were much longer than four and a quarter hours, and that Ms. Francois did, in fact, work more than 10 hours.  In one three-week period in 2007, Ms. Francois worked more than 8 hours on at least three separate occasions, and on one occasion worked nearly 11 hours.  Myatt Decl. Ex. 1 at 2, 7, 12, 13 (March 12, 2007: arriving at 8:45 a.m. and leaving at 7:30 p.m.; March 23, 2007: arriving at 9:15 a.m. and leaving at 6:00 p.m.; April 2-3, 2007: arriving at 9:20 a.m. and leaving at 6:00 p.m.).[2]

Defendants also maintain that Ms. Francois worked from 3:00 or 3:30 p.m. to 6:00 or

---

[2]  In addition, although Defendant Shade states that Ms. Francois never worked more than ten hours in a day in summer 2007, and worked from approximately 3:30 p.m. to 6:00 p.m., *see* Trepelkova Decl. Ex. E (Shade Aff.) ¶ 12, the visitor log book for Defendants' building establishes that, on June 21, 2007, Ms. Francois arrived at 10:00 a.m. and left at 8:53 p.m. Myatt Decl. Ex. 1 at 57.  And notwithstanding Defendant Shade's testimony that, between September 2007 and June 2008, Ms. Francois's workday started at either 3:00 p.m. or 4:30 p.m., *see* Trepelkova Decl. Ex. E (Shade Aff.) ¶ 13, the log book shows that, on November 26, 2007, Ms. Francois arrived at 10:55 a.m.  Myatt Decl. Ex. 1 at 132.

7:00 p.m. during the summer of 2008. *See* Trepelkova Decl. Ex. E (Shade Aff.) ¶¶ 11, 12, 14.

The visitor log book for Defendants' building tells a different story. The log book shows that, in

June and July 2008, Ms. Francois arrived for work, in many instances, before *noon*, *see, e.g.*,

Myatt Decl. Ex. 1 at 232, 241 (arriving on June 18, 2008 at 9:20 a.m., June 19, 2008 at 9:50 a.m.,

July 11, 2008 at 10:55 a.m.), and, at least in one instance, worked more than nine hours in a

single day. *See, e.g.*, *id*. at 232 (Ms. Francois worked from 11:50 a.m. to 8:55 p.m. on June 17,

2008).

Ms. Francois's overtime work was not unique to this two-month period. Glemen

Beriguette, a doorman in Defendants' building, observed that Ms. Francois did not return to the

apartment building with Defendants' daughter until "sometimes at 8, sometimes at 9, sometimes

at 10" in the evenings. Trepelkova Decl. Ex. H (Beriguette Dep. Tr.) at 24:13-17. Another

doorman, Vincent Ayende, confirmed that he saw Ms. Francois as late as 8:00 or 9:00 p.m.

Myatt Decl. Ex. 2 (Ayende Dep. Tr.) at 21:15-17. Ivan Friedman, Defendants' neighbor, saw

Ms. Francois at the apartment as late as 8:00 p.m. Trepelkova Decl. Ex. J (Friedman Dep. Tr.) at

20:19. And yet, Ms. Francois was paid the same amount each week. Francois Decl. ¶¶ 9, 10.

## V.     Ms. Francois's Employment Comes To An Abrupt End When Defendant
         Mazer Brutally Attackes Her On The Night Of December 18, 2008

After getting into an argument with Ms. Francois as she tried to protect Defendants'

crying daughter from Defendant Mazer's abusive tirade, Mr. Mazer screamed that Ms. Francois

was a "stupid black bitch," yelled that he despised her, and told her he wished that she would

"die a horrible death." Francois Decl. ¶ 15; *see also* Trepelkova Decl. Ex. C (Francois Dep. Tr.)

at 289:17-18. He made each of these hateful statements in the confines of his apartment and in

the presence of his crying daughter. Francois Decl. ¶ 15. Ms. Francois eventually spoke up to

defend herself. *Id*. Defendant Mazer, who is taller and many pounds heavier than Ms. Francois,

responded physically by slapping her across the face.  *Id.*; Trepelkova Decl. Ex. C (Francois

Dep. Tr.) at 293:3.  When Ms. Francois then reached for the phone to call the police, Defendant

Mazer grabbed her hand, twisting and digging his fingernails into it, causing her severe pain.

Francois Decl. ¶ 15.  Ms. Francois ended up on the ground underneath Defendant Mazer, who

proceeded to punch her hard in the face and torso several times.  *Id.*; Trepelkova Decl. Ex. C

(Francois Dep. Tr.) at 297:23-25.  Eventually, Ms. Francois was able to escape, and squeeze

through the door.  Francois Decl. ¶ 15; Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 298:17-18.

Defendant Mazer then pinned her against the door.  *Id.*  She escaped once again and made her

way into the hallway outside the apartment.  *Id.*  Defendants' downstairs neighbor, who ascended

to Defendants' apartment because he heard the voice of a woman "that indicated extreme

distress," observed Ms. Francois "cowering in the further corner" of the hallway outside of

Defendants' apartment.  Myatt Decl. Ex. 3 (Green-Armytage Dep. Tr.) at 28:5-11.

One building employee testified that, when Ms. Francois entered the building lobby after

the attack, "she had a black eye," and "the minute she [got] there, her hand was getting swollen."

Myatt Decl. Ex. 4 (Beriguette Dep. Tr.) at 35:18-21, 37:5-15.  Another building employee

observed: "[i]t was pretty obvious from [Ms. Francois's] face that she was assaulted."  *Id.* Ex. 2

(Ayende Dep. Tr.) at 47:12-13.  Photos taken shortly thereafter show Ms. Francois's physical

injuries, including a black eye and multiple bruises and cuts.  *See* Francois Decl. Ex. B.  Based

on her injuries, one of Defendants' neighbor—who later took Mr. Francois to the emergency

room—initially reacted that this "woman, poor woman, had been mugged out on the street; that

she was a street crime victim."  Myatt Decl. Ex. 5 (Hertzberg Dep. Tr.) at 30:10-19; *see also id.*

Ex. 6 (Francois hospital report).  Defendants' building superintendent also observed that Ms.

Francois seemed to be afraid and "shooken [*sic*] up."  *Id.* Ex. 7 (Gonzalez Dep. Tr.) at 36:4-6.

The police officer who responded to the scene even testified that, were it not for Ms. Francois's refusal to press charges due to her concern for Defendants' daughter, she would have arrested Defendant Mazer for assault and unlawful imprisonment.  Myatt Decl. Ex. 8 (Wuttke Dep. Tr.) at 22:5-9; 28:11-18, 32:15-25; *see also id.* Exs. 9-12 (police reports).

During this attack, Ms. Francois was terrified and feared for her life and safety.  Francois Decl. ¶ 17.  Defendant Mazer was larger, stronger, and seemed to have lost all control, threatening her life and then attacking her.  *Id.*  As a result of this vicious attack, Ms. Francois has suffered severe emotional distress, including humiliation, stress, and insomnia.  *Id.*

## ARGUMENT

### I.   Defendants' Motion Should Be Denied Because It Fails To Identify The "Undisputed Facts" Upon Which It Purportedly Relies

Because Defendants failed to file a Statement of Undisputed Facts, as required by the Southern District's Local Rule 56.1, this Court need not even reach the so-called "merits" of Defendants' arguments in denying their motion.  The Local Rule clearly prescribes that "[f]ailure to submit such a statement may constitute grounds for denial of the motion."  L. R. 56.1.[3]  And yet, despite four attempts to successfully file their motion papers, Defendants have repeatedly omitted this fundamental component of every summary judgment motion in this District.  The Court can and should deny Defendants' summary judgment motion on this basis.

"[A] short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried" is a bedrock element of this District's summary

---

[3] Moreover, because Defendants failed to include a Rule 56.1 Statement identifying any purportedly "undisputed facts," Plaintiff is unable to challenge that statement by demonstrating which facts are, indeed, disputed.  Unless expressly stated otherwise, no "fact" described by Defendants in their brief is admitted as undisputed by Plaintiff.

judgment procedures because it serves as a vehicle to explain, in a clear and straightforward manner, the facts of the case so that the Court may readily ascertain whether there is any "genuine dispute as to any material fact."  Fed. R. Civ. P. 56; *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.").  Because of its importance, courts routinely deny summary judgment motions where the movant has failed to include a Rule 56.1 Statement. *See, e.g.*, *United States v. Katz*, No. 10 Civ. 3335, 2011 WL 2175787, at *4 (S.D.N.Y. June 2, 2011) (collecting cases denying motions for lack of Rule 56.1 statement); *Felton v. King of Salsa, LLC*, No. 09 Civ. 7918, 2010 WL 1789934, at *2 (S.D.N.Y. May 4, 2010) (finding failure to comply with Rule warrants denial of motion).  Neither Plaintiff nor the Court should have to sort through Defendants' unorganized affidavits in an effort to ascertain the facts that Defendants believe are, and are not, in dispute. *Katz*, 2011 WL 2175787, at *4 (denying motion for summary judgment and concluding that "Katz's affidavits in support of his motion are not sufficient to satisfy his obligations under Rule 56 and Local Rule 56.1").  For Defendants' failure to submit a Rule 56.1 Statement alone, their motion for summary judgment should be denied.

## II.   Triable Issues Of Disputed Fact Preclude Summary Judgment On Plaintiffs' Wage And Hour Claims

In moving for summary judgment, Defendants mischaracterize the record and, as evidenced by both their failure to bother preparing a Rule 56.1 Statement and the brief factual summary presented above, ignore the numerous genuine issues of material fact that are crucial to Ms. Francois's wage claims.  For these reasons, summary judgment should be denied.

A.    **Ms. Francois's Burden On Summary Judgment Is "Lenient" And "Not High"**

Movants for summary judgment face a heavy burden.  *Magnoni v. Smith & Laquercia, LLP*, 661 F. Supp. 2d 412, 415 (S.D.N.Y. 2009) ("The moving party bears the burden of proving that no genuine issue of material fact exists or that, due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party.").  Defendants concede, as they must, that, on a motion for summary judgment, "a court must resolve all ambiguities, and draw all reasonable inferences against the moving party."  Defs.' Br. at 25 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986)).

Moreover, employers in a wage and hour case must meet an even higher standard in order to prevail on a motion for summary judgment.  Defendant-employers have a statutory duty to prepare and maintain records of their employees' hours and wages.  29 U.S.C. § 211(c).  When they fail to keep those records, courts require only the barest of evidence to permit plaintiffs to recover on wage and hour claims.  "'[T]he solution [in the absence of employer records] . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work,' as such a result would be contrary to the 'remedial nature' of the FLSA."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (ellipsis in original) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  Thus, at summary judgment, "an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'"  *Kuebel*, 643 F.3d at 362 (alteration in original) (quoting *Anderson*, 328 U.S. at 687); *see also* Defs.' Br. at 6.  The plaintiff's burden in this regard is "not high."  *Kuebel*, 643 F.3d at 362.  Indeed, it is well-settled that a plaintiff may "meet this burden through estimates based on his own recollection."  *Id.*; *see also Magnoni*, 661 F. Supp. 2d at 417-18 (finding that employee's

estimates of overtime work, which were provided by way of deposition testimony and a signed certification, were sufficient to create an issue of fact).  In this case, not only does Ms. Francois recall working extra hours for which she was not compensated, but documentary evidence and third-party deposition testimony support her recollection of the events in question (and discredit Defendants' version of the story).

In light of the facts set forth in Sections I-IV above, there can be no question that Ms. Francois has presented "sufficient evidence to show the amount and extent of [her uncompensated work] as a matter of just and reasonable inference."  *Kuebel*, 643 F.3d at 362. Summary judgment must therefore be denied.  *Id.* at 364 ("Ultimately, the dispute as to the precise amount of [Plaintiff's] uncompensated work is one of fact for trial."); *Magnoni*, 661 F. Supp. 2d at 417 ("The number of overtime hours that [Plaintiff] worked is a question of fact. [Plaintiff] has provided evidence of the approximate number of hours for which she believes she is entitled to overtime compensation, and Defendants dispute this evidence.  There is therefore a genuine dispute of material fact on the issue, rendering summary judgment unavailable to Defendants."); *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 271 (E.D.N.Y. 2008) (denying defendant's motion for summary judgment because plaintiff's deposition testimony, viewed in the most favorable light to her, created an issue of fact as to whether plaintiff worked in excess of forty hours a week, despite defendant's argument that plaintiff took frequent breaks).

### B.    Defendants Cannot And Do Not Claim That There Are No Material Disputed Facts

Defendants do not deny the existence of disputed facts.  Rather, Defendants dispute the credibility of Ms. Francois's testimony.  For example, Defendants argue that Ms. Francois's testimony that she worked until 11 p.m. or midnight should not be credited because it "defies belief as Defendants' daughter was two years old at that time."  Defs.' Br. at 4.  Putting aside the

fact that many parents leave sleeping children with caregivers in the evenings, Defendants' "belief" as to Ms. Francois's credibility is simply not relevant.  Credibility determinations are the province of the jury.  *Magnoni*, 661 F. Supp. 2d at 418 ("While Defendants argue that it is 'virtually impossible' that [Plaintiff] worked the claimed overtime . . . , the determination of exactly how many hours, if any, [Plaintiff] worked overtime . . . [is a] disputed question[ ] of material fact that should be resolved by a trier of facts.").

### C.    Ms. Francois's Allegations That She Was Not Paid Overtime Are Sufficient To Establish A Triable Issue Of Fact

Defendants also attempt to sidestep Ms. Francois's allegations by asserting, in reliance on *Zhong v. August Corp.*, 498 F. Supp. 2d 625 (S.D.N.Y. 2007), that "a mere allegation that an employee worked 'beyond 40 hours per week' is insufficient."  Defs.' Br. at 6.  But *Zhong* does not so hold.  Instead, *Zhong*—a decision on a *motion to dismiss*—considered the adequacy of a wage and hour complaint that was internally inconsistent as to the number of hours worked by the employee.  498 F. Supp. 2d at 630 (finding an "internal conflict within the complaint" where the employee alleged that he worked more than forty hours per week, while only indicating in the pleading that he worked twenty hours per week).  Ms. Francois's complaint contains no such internal inconsistency.  *See Nichols v. Mahoney*, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009) (upholding employees' complaint in which they "allege[d] that they were not paid overtime and that, on average, they worked over forty hours per week" and distinguishing *Zhong* on the basis that "plaintiff's pleading was internally inconsistent").  Nor would it matter.  This case is well past the pleading stage, and there is substantial evidence that Ms. Francois worked more than forty hours per week.  In light of Ms. Francois's deposition testimony, her declaration, the documentary evidence (such as the visitors' log book kept at Defendants' residence), and the third-party depositions taken in this case, there can be no question that Ms. Francois has met the

"lenient burden" of showing "the amount and extent of [her] work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687); *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998) (overturning the district court's grant of summary judgment and stating that "a material issue of fact may be revealed by [a party's] subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony, especially where the party was not asked sufficiently precise questions to elicit the amplification or explanation" (citation omitted)).  Summary judgment therefore must be denied.

### D.  Defendants Have Failed To Rebut The Presumption That Ms. Francois's Weekly Salary Covered Only A Forty-Hour Work Week

Defendants attempt to avoid Ms. Francois's overtime claims by arguing that Ms. Francois's hourly wage "account[ed] for her alleged overtime."  Defs.' Br. at 5.  That is not the case.  It is well-established that a work week is forty hours and does not include overtime unless there is an *express agreement* to the contrary.  *See, e.g.*, *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402 (RLE), 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010) ("[A] fixed salary will not be deemed to include an overtime component in the absence of an express agreement." (citation omitted)); *Chan v. Sung Ye Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *23 (S.D.N.Y. Feb. 1, 2007) ("A weekly salary does not include the overtime premium for workers who regularly work more than 40 hours a week unless there is evidence that the parties understood and intended such an arrangement.").

Where, as here, the number of hours covered by the salary is not expressly set forth in any written contract, it is presumed that a weekly salary covers only forty hours.  *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).  Contrary to Defendants' assertions, the mere fact that an employee regularly works more than forty hours per week does not establish that the

employee's salary was meant to include the required overtime premium. *See id.* at 316-17. Rather, an explicit understanding between employer and employee that the weekly salary is to include overtime hours is required. *Id.* at 317; *see also Solis v. Cindy's Total Care, Inc.*, No. 10 Civ. 7242 (PAE), 2012 WL 28141, at *19 (S.D.N.Y. Jan. 5, 2012) (rejecting defendant's claim that "overtime wages were somehow tacitly embedded in employees' daily wages" because, "[a]s a matter of law, a daily or weekly salary does not include an overtime premium for the hours worked in excess of forty hours per week, unless there is evidence that the parties intended such an arrangement and that an explicit agreement was made"). Thus, an employer who asserts that an employee's weekly salary includes required overtime payments "must prove not just that the employee regularly works over 40 hours per week, but also that the employer and employee contracted for the weekly salary to include the overtime period." *Giles*, 41 F. Supp. 2d at 317.

Defendants make no attempt to establish that they "contracted for [Ms. Francois's] weekly salary to include the overtime period," or that Ms. Francois agreed to any such arrangement. *Id.* Instead, Defendants simply argue that, because "Plaintiff was still earning approximately $10/hour based on a 50 hour work week or $9/hour based on a 40 hour work week with 10 hours of overtime," and such wage was greater than the minimum wage, Ms. Francois cannot recover under the FLSA. Defs.' Br. at 5. But Defendants cite no authority for this proposition, and Plaintiff's research has failed to uncover any case that supports it. Ms. Francois should be entitled to one and one-half times her regular of rate of pay for the overtime she worked. *See* 29 U.S.C. § 207(a)(1).[4]

---

[4] Because Defendants make the same arguments in seeking summary judgment on Plaintiff's state and federal wage and hour claims, Defendants' motion for summary judgment on

[Footnote continued on next page]

**III.    Disputed Issues Of Material Fact Exist Concerning Ms. Francois's Breach Of Contract Claim**

In or about June 2005, Defendants gave Ms. Francois a letter informing her that, as of that fall, her hours would be reduced because their daughter would begin attending school full-time (the "June 2005 Letter").  Trepelkova Decl. Ex. F.  The June 2005 Letter also informed Ms. Francois that, while her hours would be reduced, her pay would increase from $12 to $14 per hour.  *Id*.  Plaintiff did, in fact, provide services as Defendants' nanny for the September 2005 through June 2006 school year.  *See* Trepelkova Decl. Ex. E (Shade Aff.) ¶ 9.  Ms. Francois met her end of the bargain, but Defendants failed to live up to theirs when they began to pay her $250 (and later, $400) a week instead of $14 per hour.  Francois Decl. ¶ 9.

Under New York law, the elements of a breach of contract claim are (1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach.  *See*, *e.g.*, *Zubair v. Entech Eng'g*, No. 09 Civ. 7927 (VM), 2011 WL 4000888, at *8 (S.D.N.Y. Aug. 17, 2011) (denying motions for summary judgment as to breach of contract claim where genuine issues of material fact existed as to the existence of a contract, breach, and damages).  "A contract may be formed by words or by conduct that demonstrate the parties' mutual assent."  *Manigault v. Macy's East, LLC*, 318 Fed. Appx 6, 8 (2d Cir. 2009).  "In determining whether the parties' conduct is consistent with the existence of a binding contract, it is necessary that the totality of all acts of the parties, their relationship and their objectives be considered."  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 97 (2d Cir. 2007) (citation omitted).

---

[Footnote continued from previous page]
Plaintiff's New York Unpaid Overtime and Unpaid Spread of Hours claims should be denied for the same reasons as those set forth above.

Defendants do not dispute that the June 2005 Letter constituted an "offer" to Ms. Francois.  Defs.' Br. at 14; Trepelkova Decl. Ex. E (Shade Aff.) ¶ 10.  Defendants instead contend that a contract was never formed because Ms. Francois purportedly did not accept Defendants' offer.  Defs.' Br. at 14.  But Ms. Francois manifested her acceptance of that offer by continuing to serve as Defendants' nanny—picking up Defendants' daughter from school and taking her to and from extracurricular activities.  *See Friedman v. Schwartz*, No. CV 08-2801 (WDW), 2011 WL 6329853, at *5 (E.D.N.Y. Dec. 16, 2011) ("The manifestation of expression of assent necessary to form a contract may be by word, act, or *conduct* which evinces the intention of the parties to contract." (emphasis in original)); Restatement (Second) of Contracts § 19(2) (1981) (intentional conduct manifests assent where party "knows or has reason to know that the other party may infer from his conduct that he assents").

In their attempt to argue away the parties' employment contract, Defendants point to Ms. Francois's testimony "that she was never paid hourly and never got a wage of $14 per hour." *See* Defs.' Br. at 13-15.  As Ms. Francois testified, sometimes she worked less, but sometimes she worked 31 hours a week, sometimes 34.  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 190:24-25.  At a rate of $14 per hour, she should have been paid $434 and $476 per week, respectively.  The fact that Ms. Francois "could never remember getting an increase" in her pay, *id.* at 190:5-9, is evidence of Defendants' breach, not evidence that no contract existed.[5]

Moreover, Defendants' argument that there was no contract is belied by their own motion, which defends against Ms. Francois's quantum meruit claim by stating that "there was

---

[5] Eventually, Ms. Francois did complain about her pay and it was increased to $400 per week.  Defendants may argue that a new contract was formed from that time forward, but such an argument would go to the duration, rather than the existence of, Defendants' breach.

15

clearly an oral agreement between Plaintiff and Defendants." Defs.' Br. at 19. This inconsistency within their own brief establishes that there are disputed issues of material fact that must be resolved by the fact finder at trial. In light of these disputed facts relating to the existence and terms of an agreement between the parties, the Court should deny Defendants' motion with respect to Plaintiff's cause of action for breach of contract. *B2X Corp. v. Classic Closeouts, LLC*, No. 08 Civ. 4552 (RJS), 2010 WL 2230198, at *1 (S.D.N.Y. May 26, 2010) ("Because almost every material fact [relating to Plaintiff's breach of contract claim] is disputed, the motion must be denied."); *see also Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Grp. Inc.*, 636 F. Supp. 2d 223, 231 (S.D.N.Y. 2009) (denying summary judgment where facts concerning the formation of a contract were in dispute); *Deutsche Asset Mgmt. v. Callaghan*, No. 01 Civ. 4426 CBM, 2004 WL 758303, at *16 (S.D.N.Y. Apr. 7, 2004) ("The issue of whether or not the parties ever came to a meeting of the minds so as to have entered into an enforceable agreement should properly be left to the determination of the trier of fact.").[6]

IV.   **The Existence Of Material Issues Of Disputed Fact Prevent The Resolution Of Ms. Francois's Quantum Meruit Claims On Summary Judgment**

From September 2005 through June 2006, Plaintiff provided services to Defendants, in good faith, by dutifully caring for their daughter, including, among other things, picking up Defendants' daughter from school and camp, taking her to and from extracurricular activities, and preparing her food. *Leber Assocs., LLC v. Entm't Grp. Fund, Inc.*, No. 00 Civ. 3759 LTS MHD, 2003 WL 21750211, at *20 (S.D.N.Y. July 29, 2003) (finding that, "for the purpose of summary judgment, [plaintiff] has offered adequate proof that it provided services in good faith"

---

[6]   For these same reasons, Defendants' motion for summary judgment with respect to Ms. Francois's unpaid earned wages claims, which adopts their breach of contract arguments, should also be denied. *See* Defs.' Br. at 12-13.

where plaintiff provided letter of credit, as called for by proposed contract).  And Defendants accepted Ms. Francois's services.  *See, e.g.*, Trepelkova Decl. Ex. E (Shade Affidavit) ¶ 9.  Ms. Francois expected to be fairly and equitably compensated for such services based on the June 2005 Letter.  And the value Ms. Francois seeks for her services is undeniably reasonable – it is calculated using the hourly compensation Defendants themselves proposed in the June 2005 Letter.  *See, e.g.*, *Learning Annex Holdings LLC v. Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 421 (S.D.N.Y. 2011) (holding that there was "a genuine dispute as to whether and for how much [plaintiff] may recover under quantum meruit/unjust enrichment" and therefore denying summary judgment as to those claims) (cited in Defs.' Br. at 18); *Leber Assocs.*, 2003 WL 21750211, at *20 (denying summary judgment on plaintiff's quantum meruit claim where proposed contract between the parties contained evidence of the value of plaintiff's services).

That is all that is needed to establish a claim for quantum meruit.  *Afroze Textile Indus. (Private) Ltd. v. Ultimate Apparel, Inc.*, No. 07-CV-3663 (JFB) (AKT), 2009 WL 2167839, at *7 (E.D.N.Y. July 20, 2009) (in order to recover on a theory of quantum meruit under New York law, "a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services"); *Exportaciones Del Futuro*, 636 F. Supp. 2d at 233 ("It is settled law that a promisee who partially performs at a promisor's request may recover the fair and reasonable value of the performance rendered.").[7]

Defendants attempt to avoid Ms. Francois's quantum meruit claim by arguing that "there

---

[7]  A plaintiff is, of course, entitled to seek damages from a jury on alternative theories of breach of contract and quantum meruit where there is a dispute over the existence, scope, or enforceability of the putative contract.  *See Rule v. Brine, Inc.*, 85 F.3d 1002 (2d Cir. 1996).

was clearly an oral agreement between Plaintiff and Defendants regarding Plaintiff's salary and hours," and that, because of this oral agreement, Plaintiff's cause of action for quantum meruit must fail.  Defs.' Br. at 19.  However, as noted above, Defendants stake out the exact opposite position with respect to Plaintiff's breach of contract cause of action, arguing that "[Ms. Francois] cannot possibly argue that there was a meeting of the minds between herself and Defendants" as to her compensation.  *Id.* at 15.  Defendants cannot have it both ways.  *Disanto v. Mc-Graw Hill, Inc./Platt's Div.*, No. 97 Civ. 1090 JGK, 1998 WL 474136, at *3 (S.D.N.Y. Aug. 11, 1998) (denying defendant's motion for summary judgment "because the defendant's own inconsistent factual arguments illustrate that there are genuine issues of material fact to be tried"); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06 Civ. 2692 (KMW) (RLE), 2008 WL 4443828, at *15-16 (S.D.N.Y. Sept. 29, 2008) (finding a genuine issue of material fact—and denying summary judgment—where defendants attempted to rely on statements in their 56.1 Statement that were inconsistent with facts in their summary judgment briefing).  Defendants' motion should be denied.

## V.   Summary Judgment On Ms. Francois's Promissory Estoppel Claim Would Be Improper

Defendants made a clear and unambiguous promise in the June 2005 Letter to pay Ms. Francois $14 per hour beginning in September 2005.  Trepelkova Decl. Ex. F (June 2005 Letter). Defendants reasonably and foreseeably expected that Ms. Francois would provide childcare services by virtue of their promise.  And, in reliance on that promise, Ms. Francois worked as the nanny to Defendants' daughter.  *See* Compl. ¶¶ 71-75; Francois Decl. ¶¶ 9-10.  Accordingly, the record supports Ms. Francois's promissory estoppel claim.  *See, e.g.*, *Piven v. Wolf Haldenstein Adler Freeman & Herz, L.L.P.*, No. 08 Civ. 10578 (RJS), 2010 WL 1257326, at *8 (S.D.N.Y. Mar. 21, 2010) (elements of promissory estoppel claim are: "(1) an unambiguous promise; (2)

reasonable and foreseeable reliance on the promise; and (3) injury as a result of the reliance").

Once again, Defendants attempt to walk away from the June 2005 Letter, arguing that notwithstanding their unambiguous representation that Ms. Francois's wages would "*change in the fall to $14/hour*", Trepelkova Decl. Ex. F. (June 2005 Letter) (emphasis added), they never made a promise to Ms. Francois on which she could rely.  Defs.' Br. at 16.  But Defendants' denial of their promise does not negate Ms. Francois's allegations that Defendants made such a promise.  Compl. ¶ 72; *see Piven*, 2010 WL 1257326, at *8 (denying summary judgment on plaintiff's promissory estoppel cause of action where the complaint contained allegations that defendants promised to pay plaintiff).  Indeed, Defendants themselves create an issue of material fact by submitting an exhibit containing clear promissory language while simultaneously arguing that, despite such a letter, no promise was ever made.  Similarly, Defendants' attempt to turn to their favor Ms. Francois's testimony that the June 2005 Letter "didn't reflect [her] getting $14 an hour," Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 190:13-14, is misguided.  As Ms. Francois testified, the letter did not reflect that she was, in fact, paid $14 per hour.  But it did reflect Defendants' statement that she *would be* paid $14 per hour.  *See* Francois Decl. ¶ 9.  That Defendants paid her $250 (and later $400) a week does not alter their promise to Ms. Francois.

With respect to the reliance element of promissory estoppel, Defendants bizarrely contend that Ms. Francois's "actions demonstrate that she in no way relied on any such promise [to pay her]."  Defs.' Br. at 16.  But the continued service Ms. Francois provided to Defendants is the best evidence of her reliance on their promise to compensate her for the work she performed.  *See Jacobs v. Carsey-Werner Distrib., Inc.*, No. 93 Civ. 6825 (LMM), 1994 WL 116077, at *4-5 (S.D.N.Y. Mar. 30, 1994) (finding disputed issues of material fact as to whether plaintiff's reliance was reasonable).

Defendants do not dispute that Ms. Francois was financially damaged as a result of their promise to pay her.  *See* Defs.' Br. at 17; *Jacobs*, 1994 WL 116077, at *5 (denying summary judgment where defendant failed to argue that plaintiff sustained no injury as a result of his reliance).  Instead they argue that financial damage is not "unconscionable injury."  Defs.' Br. at 17-18.  But contrary to Defendants' assertions, unconscionable injury is not required to fulfill the reliance requirement of a promissory estoppel claim here.  Unconscionability must be alleged only when "promissory estoppel is pled in order to circumvent the State of Frauds."  *Piven*, 2010 WL 1257326, at *9; *see also Roberts v. Karimi*, 204 F. Supp. 2d 523, 527 (E.D.N.Y. 2002) (where "the Statute of Frauds does not bar the enforcement of the contract. . . . the plaintiff does not have to prove that his injury was 'unconscionable'").  The statute of frauds is inapplicable to this action; accordingly, proof of unconscionable injury is unnecessary and irrelevant.

Finally, Defendants contend that they are entitled to summary judgment on Plaintiff's promissory estoppel claim because New York law does not recognize promissory estoppel in the employment context.  Defs.' Br. at 18.  But Defendants' authorities, *Bessemer Trust Co. v. Branin*, 498 F. Supp. 2d 632 (S.D.N.Y. 2007) and *Deutsche v. Kroll Assocs.*, No. 02 Civ. 2892 (JSR), 31 Employee Benefits Cas. 2060 (S.D.N.Y. Sept. 19, 2003), do not foreclose Plaintiff's claim.  While Defendants' promise in the June 2005 Letter was clear and unambiguous, the offer letter in *Bessemer* only set forth, "[a]t best . . . what [the claimant] *could reasonably expect* in terms of compensation." *Bessemer*, 498 F. Supp. 2d at 639 (emphasis added).  A reasonable expectation of a particular salary and bonus differs greatly from the plain promise made here.  *Deutsche* is equally distinguishable.  There, the plaintiff had to rely on "oral promises . . . allegedly made" to him by his former employer.  *Deutsche*, 31 Employee Benefits Cas. 2060.  Here, in contrast, there is indisputable evidence of Defendants' clear and unambiguous promise

20

to Ms. Francois.  Because there are disputed issues of material fact, Defendants' motion for

summary judgment on Plaintiff's Eighth Cause of Action should be denied.[8]

## VI.   Plaintiff's Emotional Distress Claims Should Proceed to Trial

### A.   Defendant Mazer's Conduct Was Extreme And Outrageous

On the night of December 18, 2008, Defendant Mazer called Ms. Francois a "stupid

black bitch" in front of his young daughter, Trepelkova Decl. Ex. C (Francois Dep. Tr.) at

289:20-25, 290:2, and told Ms. Francois that he despised her and hoped she "die[d] a horrible

death."  Francois Decl. ¶ 15.  Defendant Mazer then slapped Ms. Francois hard across the face,

and, when she struggled against him and attempted to call the police, punched her in the face and

torso.  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 293:11-25; 295:10-25; 296:1-13; 297-98.

After Ms. Francois escaped Defendant Mazer's escalating physical and verbal abuse, she called

the police; who arrived and noted that Plaintiff had received multiple bruises and cuts on her face

and body.  Myatt Decl. Ex. 11; *see also id.* Exs. 9-10, 12.  These injuries ultimately landed Ms.

Francois in the emergency room.  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 243-49.

A claim for intentional infliction of emotional distress permits recovery of damages based

on conduct that "go[es] beyond all possible bounds of decency and [is] regarded as atrocious,

and utterly intolerable to a civilized community."  *Daniels v. Alvarado*, No. 03 CV 5832 (JBW),

2004 WL 502561, at *6 (E.D.N.Y. Mar. 12, 2004) (quoting *Murphy v. Am. Home Prods. Corp.*,

---

[8]   While several district courts have held that New York law does not recognize claims of
promissory estoppel in the employment context, the Second Circuit itself has not yet decided
the issue.  Moreover, language of the district courts notwithstanding, New York State courts
do, in fact, recognize a cause of action for promissory estoppel in the employment context.
*See, e.g.*, *Analytica Grp. v. Schoonveld*, Index No. 604258/05, 2008 NY Slip Op 32091U, at
*10 (Sup. Ct. N.Y. Cnty. July 25, 2008) ("Counterclaim Defendants' argument that a
promissory estoppel claim is inapplicable in an employment-related action has no merit.").

448 N.E.2d 86, 90 (N.Y. 1983)).  There can be little dispute that beating an employee while spewing racial epithets and telling her that she should die "a horrible death" is extreme and outrageous conduct.  Francois Decl. ¶ 15.  In an attempt to downplay the egregious nature of Mr. Mazer's conduct, Defendants labor to spin the events of December 18 as singular incidents of misconduct, arguing, for example, that "racial slurs and insults" do not constitute extreme and outrageous conduct.  Defs.' Br. at 21-22.  But this is not a situation where such insults were mere "annoyances."  *Id*. at 22.  Ms. Francois was trapped within the four walls of Defendants' Manhattan apartment when Mr. Mazer spewed his death threats and racial epithets.  Mr. Mazer made these threats within an apartment where Plaintiff worked caring for a young child for whose welfare and mental well-being she was deeply concerned.  Ms. Francois was in a vulnerable position, and therefore, a factfinder easily could find that Mr. Mazer's atrocious racial smears and terrifying death threats were "utterly intolerable to a civilized community."

Moreover, while Defendants assert that racial slurs *or* physical threats alone cannot serve as a basis for an emotional distress claim, slurs *combined* with a physical threat *can* serve as a basis for such a claim.  *See Persaud v. S. Axelrod Co.*, No. 95 Civ. 7849 (RPP), 1996 WL 11197, at *4 (S.D.N.Y. Jan. 10, 1996) (upholding intentional infliction claim where plaintiff described specific incidents in which defendant's actions became violent and threatening).  Defendant Mazer disparaged Ms. Francois's race and sex, threatened a horrible death within earshot of the child she had been hired to protect, and inflicted a vicious beating that sent Ms. Francois to the hospital.  It would seem indisputable that such conduct is extreme and outrageous.  At a minimum, Ms. Francois is entitled to have a jury decide that question.

### B.       The Extent Of Ms. Francois's Emotional Distress Is A Jury Question

Contrary to Defendants' assertions, the issue of Ms. Francois's emotional distress is hotly disputed.  As such, it remains a question for a jury.  In an attempt to downplay this dispute,

Defendants egregiously mischaracterize Ms. Francois's deposition testimony.  Defendants argue that Ms. Francois did not suffer emotional distress because she purportedly was "not upset on that night [of Defendant Mazer's assault and battery], period."  Trepelkova Ex. C (Francois Dep. Tr.) at 271:5-12.  But what Ms. Francois actually testified to was that, on the night of December 18, she was not actively upset about the underpayment of her wages. *Id.* at 271:9-12.  Similarly, Ms. Francois's testimony that she was not *angry* with Mr. Mazer *during* the assault means nothing.  That Ms. Francois's first emotion, while being beaten, was something other than "anger" does not change the fact that she was deeply *emotionally distressed*.  As Mr. Ayende, a doorman at Defendants' apartment building, testified, after leaving the Mazers' apartment, Ms. Francois appeared "distressed" and "clearly upset," and once "the altercation was over I guess the emotional state started to kick in and she started to cry."  Myatt Decl. Ex. 2 (Ayende Dep. Tr.) at 40:6-19.  And Ms. Francois herself has sworn in response to Defendants' interrogatories that "she suffered severe emotional distress, including humiliation, stress, and trouble sleeping." *Id.* Ex. 13 (Pl.'s Response to Interrogatory No. 8).  Moreover, and contrary to the unsupported allegations of Defendants in their motion papers, Ms. Francois did speak with a counselor as a result of the incident.  Trepelkova Decl. Ex. C (Francois Dep. Tr.) at 249:20-24; 250:6-9.  This unchallenged evidence is more than enough to create a genuine issue of disputed fact as to Ms. Francois's mental state.  Ms. Francois's emotional damages claims should proceed to trial.

### C.   Plaintiff's Emotional Distress Claims Are Not Duplicative Of The Assault Claim

As discussed above, Defendant Mazer engaged in extreme and outrageous conduct outside all possible bounds of decency in a civilized society.  And yet, Defendants would have this Court conclude that they can escape liability for the mental distress caused by Mr. Mazer's conduct because he also assaulted and battered Ms. Francois.  That is not the law.

Putting aside that Defendants greatly overstate the "identical" nature of Ms. Francois's claims for assault, battery and infliction of emotional distress, Defendants' own cases recognize that causes of action for assault, battery and emotional distress claims can be pursued together, at the same time.  *See, e.g.*, *McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 334-35 (E.D.N.Y. 2002) (finding "[Plaintiff's] IIED claim may not be dismissed" where Defendants conduct also supported claims for assault and battery).[9]  This is unsurprising because, much as in the instant case, emotional distress claims are often based on broader conduct than that remedied by the tort of battery.  Here, in addition to Defendant Mazer's vicious physical attack, Ms. Francois's claims are based on the threatening and malicious verbal tirade that preceded and accompanied it.  Accordingly, Ms. Francois's battery claims do not preclude her from presenting her emotional distress claims at trial.

Moreover, Defendants' argument that "negligent assault" is not a tort is a complete non sequitur.  Ms. Francois does not claim that she was negligently assaulted.  And yet, however unlikely, the jury could find Mr. Mazer's conduct to be negligent.  However the jury ultimately characterizes Mr. Mazer's misconduct, Ms. Francois should be allowed to recover for the mental distress that conduct caused.  The nature of Defendant Mazer's conduct does not preclude Ms. Francois from pursuing both negligent and intentional infliction of emotional distress claims.

## VII.   This Court Is The Proper Forum For Ms. Francois's State Law Claims

At this point in the proceedings, even if the Court were to decide the FLSA claims as a

---

[9]  Even under Defendants' (mis)formulation of the law, Ms. Francois's emotional distress claims are not barred.  The Second Circuit has not resolved the question of "whether a claim for intentional infliction of emotional distress is truly barred as a matter of law when the underlying conduct is actionable under another theory of tort liability."  *Brewton v. City of N.Y.*, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008).

matter of law, the action would properly belong in federal rather than state court.  Defendants argue that 28 U.S.C. § 1447 allows the Court discretion to remand this action if only state law claims remain.  But Section 1447 governs cases removed from state court.  The very concept of "remand" is wholly inapplicable to this action, which Plaintiff initiated in this District.

Defendants' error aside, the Second Circuit has explained that, if "the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.  Nor is it by any means necessary.'" *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (*quoting* 28 U.S.C. § 1367, Practice Commentary at 835 (1993)).  There would be nothing fair about declining jurisdiction at this point in the litigation.  Discovery is over.  As set forth in the Court's recent scheduling order, this case is to be trial-ready within 20 days of a decision on the instant motion.  To dismiss the action now would result in a substantial delay in the proceedings, much to the prejudice of Plaintiff.  Moreover, this action does not concern any novel issues of state law or otherwise involve any particular state interest.  *See Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (retaining jurisdiction where discovery had been completed, the case was ready for trial, and the state law claims involved settled principles, rather than novel legal issues).  "[T]he values of [judicial] economy, convenience, fairness, and comity" all weigh in favor of keeping this action before this Court.  *Oakley v. Fed'n Emp't & Guidance Servs., Inc.*, No. 10 Civ. 7739 (JSR), 2012 WL 20534, *7 (S.D.N.Y. Jan. 4, 2012) (citations omitted).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendants' motion for summary judgment be denied in its entirety.

Dated: New York, New York
       January 27, 2012

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Adam H. Offenhartz_____
    Adam H. Offenhartz
    Jennifer H. Rearden
    Jason W. Myatt

200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Plaintiff Patricia Francois*