UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
PATRICIA FRANCOIS, :
: 
               Plaintiff, :
: 09 Civ. 3275 (KBF)
  -against- :
: 
MATTHEW MAZER, SHERYL SHADE, :
: 
               Defendants. :
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING PLAINTIFF'S IMMIGRATION STATUS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Plaintiff Patricia Francois*

April 18, 2012

Plaintiff Patricia Francois respectfully submits this memorandum of law in support of her motion *in limine* to preclude Defendants Matthew Mazer and Sheryl Shade from presenting any argument or evidence at the trial of this action with respect to Plaintiff's immigration status.

## PRELIMINARY STATEMENT

Throughout discovery in this action, Defendants repeatedly sought information on Plaintiff's immigration status—namely discovery on whether she has legal documentation permitting her to live and/or work in the United States. Judge Sweet disallowed this area of inquiry, holding that Defendants failed to show the relevance of the information to this litigation. *See Opinion*, October 6, 2010 (D.E. 52). Thus, Plaintiff's immigration status was irrelevant in discovery, and it will continue to be irrelevant at a trial concerning whether Defendants violated state and federal wage and hour laws, and whether Defendant Mazer tortiously harmed Plaintiff. Worse than the irrelevance of this information, however, is the great prejudice that introduction of evidence relating to it will create. Courts in the Second Circuit widely recognize that the *in terrorem* effect of inquiring into a party's immigration status presents a danger of intimidating plaintiffs away from pursuing their rights before United States courts. Denying this motion *in limine* would send a message to immigrant domestic workers that they should not seek legal redress for wrongs such as underpayment and physical and verbal abuse. In light of the irrelevance and substantial prejudicial effects of this information, the scale tips heavily towards precluding evidence on immigration status. Plaintiff's motion *in limine* therefore should be granted.

## ARGUMENT

Permitting discovery into a party's immigration or citizenship status is oppressive and unduly burdensome because it could expose information that could be used outside the present litigation to prosecute the party. *See, e.g., EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404, 406 (E.D.N.Y. 2004) ("[D]iscovery of the Charging Parties' immigration status would cause them

embarrassment and if their status is found to be illegal would subject them to criminal charges and, possibly, deportation."). Further, in today's political climate, allowing a defendant to paint its opposing party as an undocumented immigrant could prejudice the jury against her, when legal status is irrelevant to the right to pursue justice. Courts in the Second Circuit have overwhelmingly held that defendants cannot seek to introduce the immigration status or alienage of a plaintiff, lest the *in terrorem* effects of permitting such evidence prevent immigrants from vindicating their rights and otherwise deny them their fundamental right of access to the courts. *See, e.g.*, *Garcia v. Bae Cleaners*, No. 10 Civ. 7804, 2011 U.S. Dist. LEXIS 142990, at *2-3 (S.D.N.Y. Dec. 12, 2011) (finding that evidence of immigration status was irrelevant and inadmissible with respect to plaintiffs' claims under the Fair Labor Standards Act and New York State Labor Law); *Solis v. Cindy's Total Care, Inc.*, No. 10 Civ. 7242, 2011 U.S. Dist. LEXIS 125501, at *3-4 (S.D.N.Y. Oct. 31, 2011) (holding that an employee's immigration status, or national origin, is clearly irrelevant to a claim for back pay for overtime wages under the FLSA).

### I. Plaintiff's Actual Immigration Status Is Not Relevant to Any Specific Claim or Defense in This Case

Federal Rule of Evidence 401 provides that "relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under this standard, immigration status is indisputably irrelevant to this action.

Plaintiff's causes of action can be divided broadly into two categories: (1) unpaid overtime, spread of hours pay, and earned wages, and related equitable claims; and (2) assault, battery, and emotional distress claims relating to Defendant Mazer's vicious attack on Plaintiff in Defendant's home. Evidence of Plaintiff's immigration status is not required to establish any of these claims, as further set forth below. Nor is it required to establish Defendants' defenses, to the extent there are any. Testimony and other evidence about the immigration status of Plaintiff are completely

unrelated to the issues in this litigation and are therefore insufficient to satisfy the relevance test of Rule 401.

Courts in this Circuit and nationwide have routinely concluded that all employees, regardless of immigration status, are protected by the provisions of the FLSA and that, accordingly, immigration status has no bearing on a claim for unpaid wages. *See De Ping Song v. 47 Old Country, Inc.*, No. 09-5566, 2012 U.S. Dist. LEXIS 30959, at *2 (E.D.N.Y. Mar. 8, 2012) ("[E]vidence [of immigration status] is completely irrelevant both to Plaintiffs' claims and credibility."). By its terms, the FLSA applies to "any individual" employed by an employer and contains no exceptions for persons who are not U.S. citizens or who are in this country illegally. *See* 29 U.S.C. § 203(e)(1). The plain language construction of this statute to mean any individual, regardless of nationality, vindicates the stated purpose of the Fair Labor Standards Act to protect workers from substandard wages. If an employer was allowed to pay an undocumented worker a substandard wage without means of redress, this would create a legally entrenched incentive to hire such employees over workers who possessed legal rights. In fact, in 2010, the Secretary of Labor supplied Judge Engelmayer with a letter from her department setting forth "the Department's longstanding interpretation that immigration status is not relevant to liability for unpaid earned wages under the FLSA." *Solis*, 2011 U.S. Dist. LEXIS 125501, at *5.

Immigration status is equally irrelevant to claims under New York wage and labor laws. *See Garcia*, 2011 U.S. Dist. LEXIS 142990, at *3 (finding that evidence of immigration status was irrelevant and inadmissible with respect to claims under New York State Labor Law); *Rengifo v. Erevos Enters.*, No. 06 Civ. 4266, 2007 U.S. Dist. LEXIS 19928, at *5 (S.D.N.Y. Mar. 20, 2007) (holding that plaintiff's immigration status was irrelevant to his claims under the New York Labor Law); *Nizamuddowlah v. Bengal Cabaret, Inc.*, 415 N.Y.S. 2d 685, 685-86 (N.Y. App. Div. 2d

Dep't 1979) (concluding that immigration status was irrelevant in a case seeking unpaid wages under New York's minimum wage law).

Quite simply, Plaintiff's "immigration status will have no bearing on the matters of consequence to be determined during the trial of this action, *to wit,* whether [she was] compensated in accordance with applicable state and federal wage and hour statutes, for the work [she] performed. Therefore, [Plaintiff's] immigration status is not relevant, as contemplated by Fed. R. Evid. 401." *Corona v. Adriatic Italian Rest. and Pizzeria*, No. 08 Civ. 5399, 2010 U.S. Dist. LEXIS 15788, at *2 (S.D.N.Y. Feb. 22, 2010).

For similar reasons, Plaintiff's immigration status is not relevant to her quantum meruit, promissory estoppel, and breach of contract claims. A plaintiff does not lose her right to legal and equitable relief for unpaid work simply because she might be an undocumented immigrant. A contrary conclusion, giving noncitizens different rights to seek redress in court, would defy the principles of equity and run afoul of equal protection laws. *See* U.S. CONST. AMEND. XIV; *Plyler v. Doe*, 457 U.S. 202 (1982); *Sugarman v. Dougall*, 413 U.S. 634, 641 (1973) ("[A]n alien is entitled to the shelter of the Equal Protection Clause.").

Nor is Plaintiff's immigration status or alienage relevant evidence of any claim or defense on Plaintiff's tort claims. Proving and defending Plaintiff's assault, battery, and emotional distress counts and Defendants' related counterclaims is solely a matter of recounting the events of December 18, 2008, when Defendant Mazer called Plaintiff a "stupid black bitch," told her he hoped she "die[s] a horrible death," and beat her, and of assessing the damage Defendant Mazer caused to Plaintiff. Not one of these facts relates in any way to whether she is legally present in the United States. *See Hagl v. Jacob Stern & Sons, Inc.*, 396 F. Supp. 779, 783-84 (E.D. Pa. 1975) ("[E]very alien, whether in this country legally or not, has a right to sue those who physically injure him."); *Topo v. Dhir*, 210 F.R.D. 76, at *12 (S.D.N.Y. Sept. 11, 2002) (granting protective

order barring inquiry into immigration status of Alien Tort Claims Act plaintiff who alleged trafficking, involuntary servitude, false imprisonment, as well as federal and state wage and hour violations); *Majlinger v. Cassino Contracting Corp.*, 803 N.Y.S. 2d 56, 70 (N.Y. App. Div. 1st Dep't 2005) (holding that undocumented immigrant could recover lost wages for personal injuries suffered at his workplace).

**II.     The Potential for Prejudice Far Outweighs Any Probative Value: Inquiry Into Immigration Status Will Create a Chilling Effect Precluding Immigrants From Vindicating Their Rights**

Courts in this Circuit agree that evidence of a plaintiff's immigration status in a case like this one will cause irremediable prejudicial effect. Some immigrant plaintiffs are in the United States without documentation, and a contrary rule would require them to choose between arrest and vindicating civil and statutory rights. Even the specter of arrest creates a chilling effect against other immigrants who seek to protect their rights.[1] Courts have repeatedly recognized this problem and forbidden evidence of a plaintiff's immigration status in a wide variety of cases. *See, e.g.*, *Garcia v. Bae Cleaners*, No. 10 Civ. 7804 (KBF), 2011 U.S. Dist. LEXIS 137634, at *2 (S.D.N.Y. Dec. 12, 2011); *Trejos v. Edita's Bar & Rest.*, No. CV-08-1477(ARR), 2009 U.S. Dist. LEXIS 21239, at *6 (E.D.N.Y. Mar. 17, 2009) ("[E]ven if the information sought [about the plaintiffs' immigration status] were somehow relevant, the *in terrorem* effect of the questions defendants seek to press outweighs the need for disclosure."); *First Wireless Group, Inc.*, 225 F.R.D. at 406 (upholding decision that discovery into charging parties' immigration status "would constitute unacceptable burden on public interest due to [a] chilling effect"). Permitting evidence or

---

[1] This chilling effect could be particularly great among immigrant domestic workers who are among the most exploited and abused of workers in the city. This fact was recognized with the Bill of Rights law signed by Governor Patterson in 2010 as a result of the activism of Ms. Francois and other domestic workers.

5

questioning about Plaintiff's immigration status in this action would produce the same terrorizing effect that concerned these courts and that these courts sought to prevent. A threat of deportation could intimidate and discourage Plaintiff and future plaintiffs from pursuing actions to vindicate their rights.

As previously noted, the irrelevance and prejudicial effect of inquiries into immigration status are so great that courts—including Judge Sweet in this action—frequently have found that it is not even a suitable area for pretrial discovery. *See Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190, 191-92 (S.D.N.Y. 2006) (in an employment action, determining that the "chilling" and "highly prejudicial" effects of such an inquiry outweighed the relevance and probative value of the discovery); *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002) ("plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA" was undiscoverable); *Rengifo*, 2007 U.S. Dist. LEXIS 19928, at *2 (finding a chilling effect in discovery of immigration status in claims for New York Labor Law violations and for assault). It has even been found to be an inappropriate area of discovery in a civil rights action against Immigration and Customs Enforcement officials that alleged the department made illegal arrests of seven men whom ICE believed to be undocumented immigrants. *See Barrera v. Boughton*, No. 07-cv-1436, 2010 U.S. Dist. LEXIS 26081, at *19 (D. Conn. Mar. 19, 2010). If immigration status is irrelevant and prejudicial in a case about immigration status, then it certainly cannot be relevant or admissible here.

### III. Plaintiff's Immigration Status Is Not Admissible for Impeachment, Especially Given the Undue Prejudice of Such Evidence

Just as Plaintiff's immigration status is not admissible as evidence in support of any claim or defense in this action, neither is it admissible under Fed. R. Evid. 608(b) or 611 to cross-examine her credibility or character for truthfulness. Any utility for such purposes—which Plaintiff does not believe exists—would clearly be outweighed by undue prejudice. *See Barrera*, 2010 U.S. Dist.

LEXIS 26081, at *18 ("[W]hatever value the information might hold as to impeachment is outweighed by the chilling and prejudicial effect of disclosure."); *Corona*, 2010 U.S. Dist. LEXIS 15788, at *3-4 (holding that plaintiff's immigration status was not appropriate evidence to establish a lack of credibility or veracity, noting that "defendants are free to employ all other means and methods typically available to litigants to attack the credibility of a witness").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court preclude argument or evidence at trial relating to Plaintiff's immigration status in the United States.

Dated: New York, New York
April 18, 2012

        GIBSON, DUNN & CRUTCHER LLP

        By: __/s/ Jennifer H. Rearden_____
            Adam H. Offenhartz
            Jennifer H. Rearden
            Jason W. Myatt
            Rachel A. Lavery

        200 Park Avenue
        New York, New York 10166-0193
        Telephone: (212) 351-4000
        Facsimile: (212) 351-4035

        *Attorneys for Plaintiff Patricia Francois*